**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| CLEARCOAST CAPITAL, LLC, | ) | CASE NO.:  2:26-cv-01709-DCN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **(NON-JURY)** |
| | ) | |
| PANEL THE PLANET, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## COMPLAINT

COMES NOW Plaintiff ClearCoast Capital, LLC ("Plaintiff" or "ClearCoast"), by and through undersigned counsel, and hereby submits this Complaint against Defendant Panel the Planet, Inc. ("Panel the Planet"), based on the allegations set forth below:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff ClearCoast is a Delaware limited liability company organized and existing under the laws of Delaware, with its principal place of business located in the State of South Carolina and registered as a foreign entity in South Carolina. It is a single-member limited liability company, and that single member is a citizen and resident of South Carolina.

2.     Upon information and belief, Defendant Panel the Planet is a General Stock C-Corporation, incorporated in the State of California, and with its principal place of business in the State of California.

3.     Upon information and belief, Defendant Panel the Planet is a company engaged in the business of providing solar energy and battery storage systems for residential and commercial projects throughout the western United States.

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a), as there is complete diversity among the parties, and Plaintiff's damages exceed Seventy-Five Thousand and 00/100 Dollars ($75,000.00), exclusive of interest and expenses.

5.     Venue is proper in this Court pursuant to the mandatory choice of law and mandatory venue provisions contained in the Notice of Purchase of Accounts Receivable and Estoppel Agreement ( "Estoppel Agreement"), executed by Panel the Planet through its Chief Executive Officer, Mark Latham ("Latham"), whereby the parties agreed that any dispute relating to the NOP and the Estoppel Agreement shall be brought exclusively in South Carolina.

## STATEMENT OF FACTS

6.     Plaintiff hereby incorporates the paragraphs above as though fully set forth herein.

7.     Plaintiff ClearCoast is a commercial finance company that provides liquidity to operating companies through invoice factoring and related financing arrangements.

8.     As part of this practice, ClearCoast purchases accounts receivable and payment intangibles from its clients at a discount and, in exchange, advances funds to those clients. Because ClearCoast receives payment from the account debtors that are

obligated to pay account receivables, ClearCoast's standard business practice is to verify the accounts receivables.

9.    As part of the verification process, ClearCoast commonly contacts account debtors to verify that the accounts receivable are true and accurate, are payable for goods and services already provided by the client, and that the account debtor will pay for goods and services already provided.

10.    Consistent with these standard business practices, the account debtor executes an estoppel agreement, one of the highest forms of verification, where the account debtor directly verifies that it will pay the invoices to ClearCoast without setoff, deduction or defense, and executes the document. ClearCoast relies on the truthfulness of estoppel agreements because the account debtor is the repayment source of the invoice and is in the best position to know whether the services and materials were completed and delivered, and whether the invoice is approved and payable for the completed work.

<u>The Factoring Relationship and Governing Law</u>

11.    On or about April 5, 2023, ClearCoast entered into a Non-Recourse Factoring and Security Agreement (the "Factoring Agreement") with Solargistix, LLC ("Solargistix" or the "Vendor"), whereby ClearCoast agreed to provide capital to Solargistix in exchange for purchasing and taking a security interest in Solargistix's accounts receivable and related payment rights.

12.    Contemporaneously with the Factoring Agreement, on or about April 5, 2023, Solargistix executed a Confession of Judgment of One Million And 00/100 Dollars

($1,000,000.00) in favor of ClearCoast, to be held by ClearCoast should Solargistix default under the Factoring Agreement.

13.    The Confession of Judgment is part of ClearCoast's standard financing package and was executed contemporaneously with the Factoring Agreement.  The Confession of Judgment is additional security for the obligations arising under the Factoring Agreement and is intended to reduce litigation costs should Solargistix default in the future.

14.    In the course of that relationship, and pursuant to the Factoring Agreement, Solargistix sold, assigned, and transferred to ClearCoast its right, title, and interest in certain receivables, including payment rights arising from invoices issued by Solargistix to its customer Panel the Planet.

<u>The Underlying Transactions and Invoices</u>

15.    Upon information and belief, Panel the Planet entered into agreements with Solargistix for the provision of labor, materials, and services related to its solar energy projects.

16.    In connection with those transactions, Solargistix issued invoices to Panel the Planet, including, without limitation, the following (collectively, the "Invoices"):

    a.  Invoice No. 200666;

    b.  Invoice No. 200683;

    c.  Invoice No. 200698;

    d.  Invoice No. 200700.

17.     Pursuant to the Factoring Agreement, Solargistix tendered these Invoices to ClearCoast to be purchased and was assigned all rights to payment under the Invoices. The total amount due and owing under the Invoices is $226,906.80.[1]

Notice of Assignment and Panel the Planet's Payment Obligations

18.     ClearCoast served Panel the Planet with a Notice of Assignment ("NOA") dated September 6, 2024, pursuant to UCC § 9-406 (as codified in S.C. Code Ann. § 36-9-406), notifying Panel the Planet that all amounts due to Solargistix had been assigned to ClearCoast and that payment could only be properly made to ClearCoast. A true and correct copy of the NOA is attached hereto as **Exhibit 1**.

19.     The NOA was delivered to Panel the Planet on September 9, 2024.

20.     Upon receipt of the NOA, Panel the Planet became legally obligated to remit all payments on the Invoices directly to ClearCoast under UCC § 9-406, and any payment to Solargistix would not discharge such obligation.

21.     Panel the Planet has failed and refused to remit payment to ClearCoast on the Invoices.

The NOP/Estoppel Agreement and Panel the Planet's Representations

22.     As part of ClearCoast's customary business practices, ClearCoast requires account debtors to execute an Estoppel Agreement, commonly referred to as a Notice of Purchase of Accounts Receivable ("Estoppel Agreement"), to verify invoices and confirm payment obligations of the account debtors.

---

[1]     The face value of the Invoices was $236,906.80; however, Panel the Planet made one partial payment of $10,000.00 on January 13, 2025, reducing the total owed to $226,906.80.

23. An estoppel agreement, including this Estoppel Agreement, is a direct contractual obligation between the factoring company and the account debtor, which obligates the account debtor to pay even if the assignor/customer (here, Solargistix) has failed to perform.

24. The Estoppel Agreement also requests that the account debtor (here, Panel the Planet) confirm that services and/or materials subject to the invoice or invoices listed on the Estoppel Agreement were performed satisfactorily and accepted by the assignor/customer.

25. This invoice verification by the account debtors (as, here, Panel the Planet) is essential to financing companies like ClearCoast as its highest and best means of verifying the validity of Invoices and that the Invoices will be paid in full.

26. By way of the Estoppel Agreement, the account debtor, Panel the Planet, verifies that the receivables will be paid to ClearCoast within thirty (30) days of executing the Estoppel Agreement, without recoupment, setoff, defense, counterclaim, or contra-related deduction, and expressly waives the same. This means, by executing the Estoppel Agreement, the account debtor, Panel the Planet, confirmed that it would pay the Invoices in full irrespective of any deficiency in the work by Solargistix.

27. ClearCoast's Estoppel Agreements also contain mandatory choice of law and choice of venue provisions that the account debtor agrees to by signing the NOP. The mandatory choice of law and choice of venue provision states: "This agreement will be interpreted and construed in accordance with the laws of the state of South Carolina,

and any action or proceeding related to this agreement shall be brought in the courts located within the State of South Carolina."

28.     On or about September 23, 2024, ClearCoast transmitted the Estoppel Agreement to Panel the Planet for execution.

29.     On September 26, 2024, CEO Latham, on behalf of Panel the Planet, executed and returned the Estoppel Agreement to ClearCoast. A true and correct copy of the Estoppel Agreement, which evidences the purchased Invoices and all amounts due thereunder, is attached hereto as **Exhibit 2**.

30.     In the Estoppel Agreement, Panel the Planet expressly represented and agreed that it was indebted on the Invoices; the Invoices were correct, due, and owing; the Invoices would be paid to ClearCoast; and that payment would be made without recoupment, setoff, defense, counterclaim, or any deduction. Specifically, the Estoppel Agreement states in pertinent part:

> As assignee of the accounts of the Vendor, the Vendor has advised us that you are indebted to them on the invoices listed on the schedule below (the 'Invoices'). We may continue extending financial accommodations to them in reliance on the Invoices listed below and the representations in this this letter. As such, please have an authorized representative of your company sign below to confirm the representation that all Invoices will be paid by you to ClearCoast without recoupment, setoff, defense, counterclaim or contra or contra related deduction, and that no contra payments or credits will be applied from this date forward.

31.     The Estoppel Agreement further provides that the prevailing party in any enforcement action is entitled to recover its attorneys' fees and costs.

ClearCoast's Reliance and Funding

32.     The Estoppel Agreement expressly states that ClearCoast relied on Panel the Planet's representations therein. The Estoppel Agreement stated that ClearCoast would extend financial accommodations to Solargistix, in reliance on Panel the Planet's promises made in the Estoppel Agreement.

33.     In addition, ClearCoast contacted Panel the Planet by telephone after receiving the executed Estoppel Agreement. On that telephone call, ClearCoast asked Panel the Planet's CEO Mark Latham to confirm whether he received the NOA, whether he understood the NOA, and whether he understood that Panel the Planet was required to forward all future payments for Solargistix's work to ClearCoast. Panel the Planet confirmed each of these points.

34.     On that same telephone call, ClearCoast inquired whether the work and/or services listed on the Invoices was complete and approved by Panel the Planet. Panel the Planet confirmed that the Invoices' work was complete and approved.

35.     ClearCoast inquired whether Panel the Planet had been working with Solargistix for a long time and whether it had ever had any issues with Solargistix's work. Panel the Planet confirmed it had worked with Solargistix for "a couple of years," and that everything had gone well in the relationship.

36.     In direct and reasonable reliance on Panel the Planet's representations and contractual commitments, ClearCoast advanced funds to Solargistix to purchase the Invoices, including advances made on or about September 26, 2024 after the phone call with CEO Latham and October 2, 2024.

37.    As a result, ClearCoast became the lawful owner of the Invoices and all associated payment rights.

### Panel the Planet's Breach and Refusal to Pay

38.    Despite its obligations under the NOA and Estoppel Agreement, Panel the Planet has made only one payment of $10,000.00 to ClearCoast on the Invoices, reducing the total sum due from $236,906.80 to $226,906.80.

39.    To date, the amount of $226,906.80 remains due and owing.

40.    In recent correspondence amongst the parties, Panel the Planet has attempted to assert alleged disputes regarding the underlying work performed by Solargistix, claiming that such issues excuse its timely and full payment of performance, which is contrary to the clear terms of the Estoppel Agreement.

41.    Such assertions are baseless and do not excuse Panel the Planet's obligations to ClearCoast, as Panel the Planet expressly waived any defenses, offsets, or claims against ClearCoast in the Estoppel Agreement.

42.    Panel the Planet's failure to pay constitutes a material breach of its contractual obligations and has caused substantial and ongoing damages to ClearCoast.

### FIRST CAUSE OF ACTION
### (Breach of Contract – Notice of Purchase and Estoppel Agreement)

43.    Plaintiff hereby incorporates the paragraphs above as though fully set forth herein.

44.     ClearCoast delivered the September 23, 2024 Estoppel Agreement to Panel the Planet, and Panel the Planet acknowledged, accepted and agreed to the following terms:

    a. That the Invoices listed on the attached schedule would be paid to ClearCoast;

    b. That the Invoices listed on the attached schedule would be paid in full without recoupment, setoff, defense, counterclaim or contra or contra related deduction; and

    c. That no contra payments or credits would be applied from the date of the Estoppel Agreement.

45.     The Estoppel Agreement is a valid and binding contract between ClearCoast and Panel the Planet, signed by the CEO of Panel the Planet.

46.     ClearCoast fully performed its obligations, including advancing funds in reliance on the Panel the Planet's agreement to the terms of the Estoppel Agreement.

47.     Panel the Planet materially breached the Estoppel Agreement by failing to pay the Invoices.

48.     Panel the Planet has further breached the Estoppel Agreement by attempting to assert defenses expressly waived therein to justify its nonpayment.

49.     The Estoppel Agreement provides that ClearCoast is entitled to recover its attorneys' fees and costs incurred in enforcing its rights.

50.     As a direct and proximate result of Panel the Planet's breach, ClearCoast has suffered damages in an amount not less than $226,906.80, plus prejudgment interest as the damages are liquidated, attorneys' fees, costs, and interest.

## SECOND CAUSE OF ACTION
### (Promissory Estoppel)

51. Plaintiff hereby incorporates the paragraphs above as though fully set forth herein.

52. Panel the Planet acknowledged and represented in the Estoppel Agreement that it was indebted to ClearCoast on the Invoices and that it would pay ClearCoast the amounts due, without setoff, defense, counterclaim, or other defense.

53. In reliance on Panel the Planet's representations and promises in the Estoppel Agreement, ClearCoast advanced funds to Solargistix and purchased the accounts receivable identified by the Invoices listed on the Estoppel Agreement for valuable consideration.

54. The promises made by Panel the Planet to ClearCoast regarding payment on the Invoices were clear, unequivocal, and unambiguous in nature, as evidenced by the express terms of the Estoppel Agreement.

55. It was reasonable and foreseeable that ClearCoast would rely on the representations and promises made by Panel the Planet in the Estoppel Agreement to pay the full amount due under the Invoices. Furthermore, the Estoppel Agreement made clear and unambiguously stated that ClearCoast was relying on the representations of Panel the Planet in the Estoppel Agreement to continue extending financial accommodations and funding to Solargistix.

56.    ClearCoast did reasonably rely on the representations and promises made by Panel the Planet and its CEO, and thereafter advanced funds to Solargistix based upon the representations and promises of Panel the Planet.

57.    As a direct result of Panel the Planet's failure to pay the outstanding amounts owed in full under the Invoices and Estoppel Agreement that were sold, assigned, and transferred to ClearCoast, ClearCoast has suffered, and continues to suffer, damages in an amount no less than $226,906.80 plus prejudgment interest as the damages are liquidated, attorneys' fees, costs, and interest.

## THIRD CAUSE OF ACTION
### (Negligent/Intentional Misrepresentation)

58.    Plaintiff hereby incorporates the paragraphs above as though fully set forth herein.

59.    Panel the Planet made false representations to ClearCoast, including but not limited to:

a.    Asserting that the work and services listed on the Invoices were complete and delivered;

b.    Stating that Panel the Planet had been working for years with Solargistix without issue and that everything had gone well in the relationship;

c.    Confirming that Panel the Planet understood the NOA and its responsibility to forward all future payments for Solargistix's work to ClearCoast;

d.    Confirming that the Invoices were approved and payable for the completed work;

e.    Confirming that Panel the Planet would pay the Invoices in full; and

f.    Failing to disclose that Panel the Planet had issues with Solargistix's work.

60. Panel the Planet had a pecuniary interest in making the false representations to ClearCoast because ClearCoast confirmed that it would continue to fund Panel the Planet's customer, Solargistix, in reliance on Panel the Planet's agreement to pay ClearCoast.

61. Panel the Planet owed a duty to ClearCoast to communicate truthful information to ClearCoast.

62. Upon information and belief, Panel the Planet either knew or should have known that the representations were false at the time they were made or made these misrepresentations in reckless disregard of their truth or falsity.

63. Panel the Planet breached its duty by failing to exercise due care and failing to communicate truthful information to ClearCoast.

64. ClearCoast justifiably relied upon the false representations made by Panel the Planet, as evidenced by the confirmation in the Estoppel Agreement that ClearCoast "may continue extending financial accommodations to [Solargistix] in reliance on the Invoices listed below and the representations in this [Estoppel Agreement]."

65. As a direct and proximate result of Panel the Planet negligent or intentional misrepresentations, ClearCoast has suffered damages in an amount no less than $226,906.80, plus pre judgment interest.

66. ClearCoast is entitled to recover its actual, consequential, and punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff ClearCoast respectfully requests that this Court enter judgment in its favor and against Defendant Panel the Planet and award:

A.     Actual damages in an amount not less than $226,906.80, plus consequential and punitive damages;

B.     Pre-judgment interest;

C.     Reasonable attorneys' fees and costs pursuant to the Estoppel Agreement;

D.     Costs of this action; and

E.     Such other and further relief as the Court deems just and proper.

Respectfully submitted,

COOPER | TIERNEY

/s/ *Lindsey W. Cooper Jr.*
Lindsey W. Cooper Jr. (Fed Bar No. 9909)
Charlie W. Patrick (Fed Bar No. 13029)
M. Linsay Boyce (Fed Bar No. 11952)
36 Broad Street, 3rd Floor
Charleston, SC  29401
Telephone: (843) 375-6622
Facsimile: (843) 375-6623
Email: lwc@coopertierney.com
        cwp@coopertierney.com
         linsay@coopertierney.com

*Attorneys for ClearCoast Capital, LLC*

Dated:  April 24, 2026
Charleston, South Carolina

- 14 -